IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| BONNIE SUE PARKER, an individual, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: |
| FINANCIAL CREDIT SERVICE, INC., a/k/a ARA, INC., a/k/a ASSET RECOVERY ASSOCIATES, | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for her Complaint against the Defendant:

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), out of state law violations and out of the invasions of Plaintiff's personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

2. Congress found it necessary to pass the FDCPA due to rampant abusive Practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a)    There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

    (b)    Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    (c)    **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

    (d)    Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

    (e)    It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## JURISDICTION

3.    Personal jurisdiction exists over Defendant FCS as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.

4.    Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed is over $75,000.00 between the diverse parties.

## VENUE

5. Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## PARTIES

6. Plaintiff Bonnie Sue Parker (hereinafter "Plaintiff") is a natural person who is a resident and citizen of Alabama in this judicial district.

7. Defendant Financial Credit Service, Inc. a/k/a ARA, Inc. a/k/a Asset Recovery Associates ("Defendant" or "FCS[1]") is a foreign debt collection firm that engages in the business of debt collection in Alabama (including this judicial district). It is a debt collector under the FDCPA. It is incorporated in Illinois and has its principal place of business in Illinois.

8. FCS is not licensed to do business in Alabama.

## FACTUAL ALLEGATIONS

9. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

---

[1] "FCS" or "Defendant" means the named Defendant directly or through its debt collectors, employees and agents that took any collection action against Plaintiff.

10. The alleged debt is a car loan from last century (1990s).

11. Plaintiff does not owe this debt to Defendant.

12. Plaintiff started receiving calls and letters from Defendant FCS.

### Collection Calls From Defendant FCS

13. In early April 2012, Defendant FCS called Plaintiff about this alleged debt.

14. Defendant FCS told Plaintiff that it was collecting a debt previously owed to Credit Acceptance Corporation.

15. Defendant FCS told Plaintiff that if Plaintiff did not pay this debt, Defendant FCS would take Plaintiff to court and garnish Plaintiff.

16. The threat of being sued on this alleged debt, which went into default in the 1990's, was very frightening and upsetting to Plaintiff.

17. The amount Defendant FCS claimed Plaintiff owed Defendant FCS was $17,992.15.

18. The threat of having Plaintiff's bank account or wages garnished was even more terrifying to Plaintiff.

19. If Plaintiff's wages were garnished, Plaintiff would be unable to pay for the necessities of life.

20. Defendant FCS knows the statute of limitations has long expired on this alleged debt.

21. Defendant FCS knows that it is illegal to threaten to sue a consumer on a consumer debt after the statute of limitations has expired.

22. Defendant FCS knows that it is illegal to threaten a consumer with any action that Defendant FCS cannot legally take.

23. Defendant FCS knows that it is illegal to threaten a consumer with any action that Defendant FCS does not intend to take.

24. Defendant FCS has continued to collect on this ancient debt.

### Reasons For FCS's Illegal Conduct

25. The purpose of the Defendant FCS's lying and threatening Plaintiff about suing and garnishing was to harass, annoy, abuse, or oppress Plaintiff, so that the Plaintiff pays the debt.

26. Filing a lawsuit is one of the most powerful means of wrenching payment from consumers such as Plaintiff.

27. Threats of garnishment strike to the heart of consumers such as Plaintiff and bring to mind images of not being able to pay for necessities, including shelter, food, and clothing.

28. The threat and lie by FCS regarding suing and garnishing are classic dirty tricks of abusive debt collectors.

29. FCS knows it is illegal to sue on a debt this old as the statute of limitations has long passed.

30. Knowing that threats of suing and garnishment will normally result in quick payments by consumers, as the harm of being sued and garnished is tremendous, abusive debt collectors such as FCS use these threats with great success.

31. FCS knows no garnishment can take place without a judgment.

32. FCS knows it had no intention of suing Plaintiff.

33. These are favorite tactics of abusive debt collectors.

34. The reason is that these tactics are so effective.

35. The reason FCS has collected, and continued to collect, on a debt Plaintiff does not owe is FCS believes that by continuing to call, by threatening, and by lying, that Plaintiff will pay this debt even though Plaintiff does not owe it.

36. The Defendant FCS misrepresented multiple aspects about this debt including the character, amount, and legal status of the debt.

37. The calls from FCS have been of a frequency and type that the natural consequence is to annoy, harass, oppress and abuse Plaintiff.

38. The calls from FCS have been made with the frequency and content designed to annoy, harass, oppress and abuse Plaintiff.

39. Defendant FCS has been successful as its actions have annoyed, harassed, abused, and/or oppressed Plaintiff.

40. Much to the regret of Defendant, Plaintiff refused to pay the debt even when lied to and threatened by Defendant.

41. Defendant FCS has refused to give all required disclosures under the FDCPA when communicating with Plaintiff.

42. Defendant FCS is a debt collector under 15 U.S.C. § 1692a(6).

43. Defendant FCS would have continued to escalate the collection efforts against Plaintiff but for this lawsuit which will stop all collection actions by Defendant.

44. Other than paying the alleged debt, only this lawsuit will stop Defendant's collection actions.

45. Even though Defendant FCS knows its actions are illegal, it is perfectly willing to continue to act illegally for several reasons.

46. First, Defendant FCS believes that most Alabama consumers will not know that it is illegal for Defendant FCS to lie, to threaten illegal lawsuits, and to make illegal third party disclosures.

47. Second, Defendant FCS believes that the very few Alabama consumers, who realize this is illegal for Defendant FCS to act in this way, will be able to find representation or will otherwise take action.

48. Defendant FCS believes that these very few Alabama consumers who do take action will either drop the matter or will file a pro se case where counsel

for Defendant FCS will be able to defeat the claims of the pro se consumer plaintiff.

49. Third, even if the Alabama consumer is able to find representation, Defendant FCS is confident that it will not have to pay any damages above the maximum statutory damages of $1,000.

50. Defendant FCS believes that judges will not allow mental anguish to go to the jury.

51. Defendant FCS believes no punitive damages will be assessed against it under state law.

52. Defendant FCS believes that any suit against it under the FDCPA can be defeated by an offer of judgment of $1,501 or some other small number above $1,000.

53. Defendant FCS believes that since it will very rarely be sued in Alabama, particularly given the large number of violations it commits in Alabama, and given that it believes (incorrectly) that it is not subject to mental anguish claims and punitive damages claims, Defendant FCS is quite willing to continue to break the law in Alabama.

54. Defendant FCS has determined that the costs of limited litigation (by settling cases cheaply or small offers of judgment) are vastly outweighed by the profit in harassing and abusing Alabama consumers into paying money that

would not have been paid if Defendant FCS had not harassed and abused the Alabama consumers.

55. Unfortunately, Defendant FCS is correct in its conclusion that it has been more profitable to violate the law than to obey it.

56. This lawsuit is being brought to change that conclusion by obtaining damages on behalf of Plaintiff.

57. Defendant FCS's actions not only harm Alabama consumers, but also put legitimate and law abiding debt collectors at a competitive disadvantage.

58. Congress recognized this problem over 30 years ago and that is part of the reason the FDCPA was passed.

## SUMMARY

59. All of the above-described collection communications made to Plaintiff by Defendant FCS and collection agents of Defendant FCS were made in violation of the FDCPA.

60. Defendant FCS violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692d(5), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692g, 1692g(a)(1), and 1692g(a)(2).

61. The above-detailed conduct by Defendant FCS of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

62. The above detailed conduct by Defendant FCS reflects its knowledge and appreciation for the harm that would naturally and likely happen to Plaintiff and with full knowledge thereof that Defendant FCS willfully, maliciously, recklessly, and/or negligently undertook its actions and it was successful in causing the harm to the Plaintiff that Defendant wanted to cause.

63. The collection activities by Defendant FCS and its agents caused Plaintiff stress and anguish.

64. Defendant's repeated attempts to collect this debt from Plaintiff and refusal to stop violating the law was an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

65. Plaintiff has suffered actual damages as a result of these illegal collection actions by Defendant FCS in the form of monetary loss, anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of Defendant.

66. The only way that abusive debt collectors like Defendant FCS will stop its abusive practices towards consumers is by a jury verdict fully compensating Plaintiff for the harm done to Plaintiff and by a punitive damage award.

67. A punitive damage award will get the attention of Defendant FCS and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain an unfair competitive advantage over honorable, law abiding collectors.

68. A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA - stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

## RESPONDEAT SUPERIOR LIABILITY

69. The acts and omissions of Defendant's agents who communicated with Plaintiff as more further described herein, were committed within the line and scope of their agency relationship with their principal the Defendant.

70. The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant FCS in collecting consumer debts.

71. By committing these acts and omissions against Plaintiff, these other debt collectors were motivated to benefit their principal the Defendant.

72. Defendant FCS is therefore liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent

acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

73. Defendant FCS negligently and/or wantonly and/or hired, retained, trained or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. The acts and omissions of Defendant FCS and its agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff including, but not limited to the following: 1692d, 1692d(5), 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692g, 1692g(a)(1), and 1692g(a)(2).

76. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages; actual and compensatory damages; and reasonable attorney's fees, expenses and costs, from Defendant.

## COUNT II.

## INVASION OF PRIVACY

77. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

78. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant FCS violated Alabama state law as described in this Complaint.

79. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

80. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and

confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

81. Defendant FCS and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

82. Defendant FCS and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

83. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

84. The conduct of Defendant FCS and its agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

85. The conduct of Defendant FCS went beyond the bounds of reasonableness in the collection of the alleged debt for all of the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

86. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant.

87. All acts of Defendant FCS and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

88. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

89. Defendant FCS negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

90. Had Defendant FCS hired competent debt collectors, the violations described in this Complaint would not have occurred.

91. Had Defendant FCS properly trained and/or supervised the debt collectors, the violations described in this Complaint would not have occurred.

92. Defendant FCS carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

93. Defendant FCS knew that the actions it was taking against the Plaintiff would likely, and certainly, cause the exact type of injuries and damages that Plaintiff suffered at the hands of Defendant.

## COUNT IV

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

94. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

95. Defendant FCS owes a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

96. Defendant FCS has assumed a duty to act reasonably towards Plaintiff and not to unreasonably cause Plaintiff harm.

97. Defendant FCS owes a duty to consumers against whom it is collecting to act reasonably.

98. All of the actions described in this Complaint demonstrate that Defendant FCS did not act reasonably towards the Plaintiff.

99. Defendant FCS, by its described conduct, breached its duty to act reasonably towards Plaintiff.

100. Defendant FCS proximately caused injuries and damages to Plaintiff which were of the precise nature that Defendant anticipated causing when it breached its duty to act reasonably.

101. Defendant FCS knew, or should have known, that its conduct was likely to lead to the Plaintiff's injuries yet it acted despite this knowledge.

102. Defendant FCS acted with full knowledge and with the design and intent to cause harm to Plaintiff.

103. Defendant FCS was successful in its design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of Defendant when dealing with consumers who do not pay debts that Defendant alleges are owed.

104. Defendant FCS acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

105. Defendant FCS violated all of the duties Defendant had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

106. It was foreseeable, and Defendant FCS did in fact foresee it, the actions of the Defendant would lead and did lead to the exact type of harm suffered by Plaintiff.

107. Defendant FCS acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

108. Defendant FCS invaded the privacy of Plaintiff as set forth in Alabama law.

109. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

110. As a result of this conduct, action, and inaction of Defendant, Plaintiff has suffered damage as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendant FCS for all damages allowable (including statutory, actual, compensatory, nominal and punitive), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

*[signature]*

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com

**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

*[signature]*

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Financial Credit Service, Inc.
a/k/a ARA, Inc., a/k/a Asset Recovery Associates
c/o Mario Bianchi
1919 S. Highland Avenue, Suite 225A
Lombard, Illinois 60148